UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION

| | |
|---|---|
| DOVID TYRNAUER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BEN & JERRY'S HOMEMADE, INC.,<br><br>Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

# CLASS ACTION COMPLAINT

Plaintiff Dovid Tyrnauer ("Plaintiff"), on behalf of himself and all others similarly situated, alleges the following Class Action Complaint (the "Action") against Ben & Jerry's Homemade, Inc. ("Ben & Jerry's" or "Defendant") upon personal knowledge as to himself and his own actions, and upon information and belief, including the investigation of counsel as follows:

## I. NATURE OF THE ACTION

"*Stories of kids dropping out of school, collapsing from exhaustion, and even losing limbs to machinery are what one expects to find in a Charles Dickens or Upton Sinclair novel, but not an account of everyday life in 2023, not in the United States of America.*"

United States Congresswoman Hillary Scholten (D-Mi.)[1]

1. Ben & Jerry's produces a premium priced ice cream brand by the same name, Ben & Jerry's.

2. Ben & Jerry's is sold throughout the world with ceaseless representations regarding the product's supposedly ethical supply chains, including the "Caring Dairy"[2] and "Milk with Dignity"[3] programs, which are human rights-centric and designed to attract consumers wishing to buy products that may be more ethically sourced. Unfortunately, this is not the case.

---

[1] Comments by U.S. Congresswoman Hillary Scholten on the House floor (February 27, 2023) in response to the *New York Times* exposé detailed herein.

[2] https://www.benjerry.com/caringdairy, (last accessed Mar. 2, 2023).

[3] https://milkwithdignity.org, (last accessed Mar 2, 2023).

3.     While Ben & Jerry's purports to use ethical supply chains and professes concern about farmworker welfare, the reality could not be further from the truth. Migrant child labor is used in Ben & Jerry's supply chains.[4]

4.     Ben & Jerry's wishes to have its ice cream and eat it too. It wishes to sell premium priced products with pompous virtue-signaling representations regarding its supposedly ethical sourcing all the while migrant child labor is used in its supply chains. Put simply, this is a case about greed run amok.

5.     The premiums that consumers pay for allegedly ethically-sourced products, in this instance, are not justified and constitute a breach of consumer trust through the misrepresentations that Defendant makes.

6.     Plaintiff brings this Action on behalf of himself and all others similarly situated who purchased Ben & Jerry's ice cream during the applicable statutory period throughout the United States.

II.     **JURISDICTION AND VENUE**

7.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act because there is minimal diversity between the litigants. Namely, Plaintiff Tyrnauer is a New York resident whereas Defendant Ben & Jerry's is domiciled in Vermont, the damages far exceed $5,000,000, and there are at least 100 class members.

8.     This Court has personal jurisdiction because Plaintiff resides in and was harmed in this jurisdiction and because Defendant directed enormous business, advertising, and sales into

---

[4] Hannah Dreier, "*Biden Administration Plans Crackdown on Migrant Child Labor*," NYTIMES (ONLINE) (Feb. 27, 2023), at https://www.nytimes.com/2023/02/27/us/biden-child-labor.html.

this jurisdiction by widely distributing and making available for purchase its products through thousands of retailers and other outlets located in this jurisdiction.

9. Venue is appropriate because Plaintiff Tyrnauer resides in this District. Additionally, venue is proper in this District because a substantial part of the events or omissions giving rise to the claims occurred in this District.

### III. PARTIES

*Plaintiff Tyrnauer*

10. Plaintiff Tyrnauer is, and at all relevant times was, a New York resident. Plaintiff Tyrnauer purchased Ben & Jerry's ice cream during the applicable statutory period.

11. Plaintiff Tyrnauer was harmed when he paid for Ben & Jerry's ice cream during the applicable statutory period because had he known that migrant child labor is used in Ben & Jerry's supply chain, he either would not have purchased or would have paid less for the products sold by Defendant.

*Defendant Ben & Jerry's Homemade, Inc.*

12. Defendant Ben & Jerry's is a Vermont corporation headquartered in Vermont.

### IV. FACTUAL ALLEGATIONS

*Defendant's Business*

13. Ben & Jerry's is an iconic American dairy company that sells mostly ice cream products.

14. Since Ben & Jerry's humble beginnings in Vermont, they have expanded enormously and can now be found in almost any grocery store.

15. Ben & Jerry's has historically leaned into social justice issues as a core component of its branding and marketing, ostensibly in order to attract like-minded consumers that seek to use

their purchasing power to promote a common ethos. These consumers pay a premium for the Ben & Jerry's product because Ben & Jerry's purportedly maintains some of the highest ethical standards in the dairy industry. These ethics-based and ethical sourcing initiatives promoted by Ben & Jerry's include, for example, its participation in the "Caring Dairy" and "Milk with Dignity" programs.

  a. Caring Dairy is an internal Ben & Jerry's "program that helps farmers move toward more sustainable practices on the farm." Caring Dairy has three pillars – 'happy cows,' 'happy farmers,' and 'happy planet.'

  b. Milk with Dignity espouses values similar to the internal Caring Dairy program. Milk with Dignity is, however, a standards council composed of and subscribed to by various participants in the dairy industry who have each agreed to subscribe to enumerated standards and ethical guidelines.

16. Not only are these standards intended to help the company perform within a set of ethical guidelines, subscribing to these standards is also a calculated business decision intended to attract ethics-driven consumers. Ben & Jerry's purportedly implements these standards, which presumptively increase its operating costs, and passes down those costs to its consumers – consumers who are more than willing to pay extra for products that are sustainably sourced and ethically made.

17. The actual Ben & Jerry's ice cream packaging itself says "We strive to make the best possible ice cream in the best possible way." As can be seen below:



18. Ben & Jerry's implores consumers to buy its product because they are *better*—driven by ethics and values, not just profits—in comparison to other ice cream brands. Ben & Jerry's promotes this image of itself to distinguish its brand and its products on the basis that it is purportedly a company guided by core values in human rights, social and economic justice, and environmental concerns. Ben & Jerry's goes above and beyond to tell consumers they should feel

good about buying its products over others because Ben & Jerry's is using "ice cream to change the world."

19. This ethos is ingrained in every aspect of Ben & Jerry's image. Ben & Jerry's is known for speaking out on social and political issues and has even created and named ice cream flavors to raise awareness for specific initiatives, such as its "EmpowerMINT" flavor. Ben & Jerry's website touts company values such as thoughtful sourcing of ingredients, environmentally conscious farming, and animal welfare. Ben & Jerry's also produces a podcast to further promote its value-driven business model and discuss hot-button social and political issues such as voting rights, cannabis justice, and dignity for migrant workers.

20. On Ben & Jerry's website, there are numerous representations regarding the company's emphasis on values, including:

　　a. "We love making ice cream – but using our business to make the world a better place gives our work its meaning. Guided by our Core Values, we seek in all we do, at every level of our business, to advance human rights and dignity, support social and economic justice for historically marginalized communities, and protect and restore the Earth's natural systems. In other words: we use ice cream to change the world."

　　b. "**Human Rights & Dignity.** We are committed to honoring the rights of all people to live with liberty, security, self-esteem, and freedom of expression and protest, and to have the opportunity to provide for their own needs and contribute to society."

　　c. "Capitalism and the wealth it produces do not create opportunity for everyone equally. We recognize that the gap between the rich and the poor is wider than at

any time since the 1920s. We strive to create economic opportunities for those who have been denied them and to advance new models of economic justice that are sustainable and replicable."

21. Since 2012, Ben & Jerry's has been certified as a "B Corporation." B Corporations must satisfy a rigorous set of standards of verified social and environmental performance, public transparency, and legal accountability.[5] In its most recent annual disclosure to remain a Certified B Corporation, Ben & Jerry's reported that no part of its supply chain employed child labor.[6]

22. Conscious consumers are thereby enticed by this significant volume of messaging to pay a premium for Ben & Jerry's products on the premise that the brand is ethically and morally superior to competitor brands.

23. Indeed, in the second paragraph of a complaint filed by Ben & Jerry's in this District in 2022, Ben & Jerry's acknowledged that the "Ben & Jerry's brand is synonymous with social activism" and proclaimed that the Ben & Jerry's "core values of advancing human rights and dignity, supporting social and economic justice for historically marginalized communities, and protecting and restoring the Earth's natural systems are integral to Ben & Jerry's identity."

***The Sad Truth is Revealed***

24. However, in contrast to the representations that Defendant incessantly makes to consumers, Ben & Jerry's was recently exposed for using at least one supplier that employs migrant child labor.

---

[5] https://www.bcorporation.net/en-us/standards, (last accessed Mar. 2, 2023).

[6] https://www.bcorporation.net/en-us/find-a-b-corp/company/ben-and-jerrys, (last accessed Mar. 2, 2023).

7

25. A *New York Times* exposé published on February 25, 2023—titled "Alone and Exploited, Migrant Children Work Brutal Jobs Across the U.S."—revealed the widespread exploitation of migrant children in the United States.[7] Migrant child laborers were found working in Ben & Jerry's supply chain milk processing facilities.[8]

26. The *New York Times* exposé delved into the systemic use and exploitation of migrant child workers throughout the United States. It identified Ben & Jerry's, among other corporations, as benefitting from the use of vulnerable child migrant workers. In the course of the *New York Times* investigation, over 100 child workers were interviewed and "described jobs that were grinding them into exhaustion, and fears that they had become trapped in circumstances they never could have imagined."

27. Speaking at the White House, Karine Jean-Pierre, the White House press secretary, called these revelations by the *New York Times* "heartbreaking" and "completely unacceptable."[9]

28. In response to the *New York Times* exposé, The Refugee and Immigrant Center for Education and Legal Services (RAICES), a respected San Antonio-based 501(c)(3) nonprofit agency that is admirably dedicated to serving immigrant children, families, and refugees issued a statement regarding these revelations:

> **Sign the Petition to Tell Ben & Jerry's: End All Contracts With Manufacturers Who Use Migrant Child Labor**

---

[7] Hannah Dreier, "*Alone and Exploited, Migrant Children Work Brutal Jobs Across the U.S.*," NY TIMES (ONLINE) (Feb. 25, 2023), at https://www.nytimes.com/2023/02/25/us/unaccompanied-migrant-child-workers-exploitation.html.

[8] *Id.*

[9] Hannah Dreier, "*Biden Administration Plans Crackdown on Migrant Child Labor*," NYTIMES (ONLINE) (Feb. 27, 2023), at https://www.nytimes.com/2023/02/27/us/biden-child-labor.html.

8

> An investigative piece from The New York Times uncovered an unfathomable shadow economy in the U.S. where migrant children as young as 12 years old are working illegal and dangerous jobs, employed by manufacturing companies willfully looking away — and brands as popular as Ben & Jerry's, PepsiCo, and General Mills are profiting off of this child labor.
>
> Corporate America is enabling the exploitation of migrant children by looking the other way — but we expected more from the people behind Ben & Jerry's, who claim to "drive systemic progressive social change."
>
> But when The Times found that migrant children are processing the milk used in Ben & Jerry's ice cream, a company spokesperson reportedly said that "If migrant children needed to work full time, it was preferable for them to have jobs at a well-monitored workplace."
>
> This statement is outrageous.
>
> As a beloved brand supporting progressive values, we demand that Ben & Jerry's does more to uncover and end its unethical child labor practices used to make our favorite pints of ice cream.[10]

29. The use of migrant child labor within Ben & Jerry's supply chain is in sharp contrast with Ben & Jerry's centric branding messaging of having the highest values and self-imposed standards.

30. These standards are a transparent business decision designed to attract consumers. Ben & Jerry's supposedly implements their high standards (which presumptively cost more than the less ethical methods) and then passes down those costs to consumers who are more than willing to pay extra for products that are sustainably sourced and ethically made.

31. Yet, Ben & Jerry's supply chain uses migrant child labor, thereby cutting corners to save costs, but still passing down higher prices to consumers under the guise of ethically sourced products.

---

[10] https://www.raicestexas.org/2023/03/01/petition-ben-jerrys-migrant-child-labor/, (last accessed Mar. 2, 2023).

9

32. This is not only disgraceful, but it enriches Ben & Jerry's beyond what is fair and equitable at the cost of consumers.

33. Tellingly, in response to the *New York Times* expose, when contacted by Fox News, Ben & Jerry's did not deny the allegations, as any company would be expected to do if the allegations were false. Nor did Ben & Jerry's even claim to lack knowledge of the allegations. Instead, Ben & Jerry's trotted out a hollow corporate-speak statement, stating: "Ben & Jerry's is opposed to child labor of any kind whatsoever. The company … ensures that farmworkers are fairly compensated for their labor, work in healthy conditions, and builds in additional safeguards for those who are 16 and 17."[11]

***Harm to Consumers***

34. Plaintiff and the proposed class are harmed because, had they known that the products sold by Ben & Jerry's were produced via supply chains that contained migrant child labor, they would not have bought these products at all or would have been willing to only pay a fraction of what they actually paid.

35. As reported by *Forbes* in October 2021, a review of an OpenText survey of over 25,000 consumers across 12 countries found, among other things, that "[w]hen asked whether purchasing ethically sourced and/or produced products matters, 81 percent of respondents said yes." The *Forbes* article noted that the majority of consumers are willing to "put their money where their mouth is," noting that "[w]hen asked if they would be willing to pay more for a product they could be sure was ethically sourced, more than 83 percent of respondents said yes. More than

---

[11] Kelsey Koberg, "*Ben & Jerrys suppliers use migrant child labor, despite company's 'progressive' values*," FOXNEWS (ONLINE) (Feb. 28, 2023), at https://www.foxnews.com/media/ben-jerrys-suppliers-use-migrant-child-labor-despite-companys-progressive-values.

17 percent indicated they would be willing to pay 50 percent more, and on average, consumers said they would be willing to spend about 17.5 percent more on ethically sourced products."

36. Ironically, despite cutting corners in their labor practices, Ben & Jerrys continues to raise prices on consumers even beyond the premium they already charge for their purportedly 'ethically sourced' products, raising prices for Ben & Jerry's ice cream by 13% in the fourth quarter of 2022 alone.[12]

V. CLASS ALLEGATIONS

37. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23. Plaintiff seeks to represent the following Class as well as the following Sub-Class:

> **Nationwide Class.** All consumers in the United States during the applicable statutory period who bought Ben & Jerry's products.
>
> **New York Sub-Class.** All consumers in the State of New York during the applicable statutory period who bought Ben & Jerry's products.

38. Excluded from the Class and the Sub-Class are (1) Ben & Jerry's Homemade, Inc., any entity or division in which it has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

39. **Numerosity:** The members of the Class and the Sub-Class are so numerous that joinder of all members is impracticable. While the exact number of Class and Sub-Class members is currently unknown to Plaintiff, based on Ben and Jerry's volume of sales, Plaintiff estimates that each Class numbers in the hundreds of thousands if not more.

---

[12] Isabella Simonetti, "*Big Brands Keep Raising Prices, With Limited Shopper Resistance*," NYTIMES (ONLINE) (Feb. 9, 2023), at https://www.nytimes.com/2023/02/09/business/pepsico-unilever-inflation.html.

40. **Commonality:** There are questions of law and fact that are common to the Class and Sub-Class and these questions of law and fact predominate over any questions affecting only individual Class and Sub-Class members. These questions include:

   a. Whether Defendant breached its express warranties to consumers, including Plaintiff and the Class and the Sub-Class;

   b. Whether Defendant committed deceptive or unfair practices;

   c. Whether Defendant's advertising was false or misleading;

   d. What is the extent of the damage caused by Defendant;

   e. Whether Plaintiff and the Class are entitled to monetary and injunctive relief; and

   f. All other remedies that may be appropriate to remedy Defendant's conduct.

41. **Typicality:** Plaintiff's claims are typical of the whole Class because Plaintiff suffered the same type of injury as the other Class and Sub-Class members – *i.e.*, Plaintiff suffered the same overcharge as a result of Defendant's deceptions, misrepresentations, and omissions.

42. **Adequacy:** Plaintiff will fairly and adequately represent and protect the interests of the members of the Class and Sub-Class. Plaintiff does not have any interests that are adverse to those of the Class and Sub-Class members. Plaintiff has retained competent counsel experienced in class action litigation and intends to prosecute this action vigorously.

43. **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Since the damages suffered by individual Class and Sub-Class members are relatively small, the expense and burden of individual litigation make it virtually impossible

for the Class and Sub-Class members to seek redress for the wrongful conduct alleged on an individual basis.

44. The prerequisites for maintaining a class action for injunctive or equitable relief under Federal Rule of Civil Procedure 23(b)(2) are met because Defendant has acted or refused to act on grounds generally applicable to the Class and Sub-Class, thereby making appropriate final injunctive or equitable relief with respect to the Class and Sub-Class as a whole.

## VI. CAUSES OF ACTION

### COUNT I

### BREACH OF EXPRESS WARRANTY

45. Plaintiff repeats the allegations in all of the foregoing paragraphs as if fully set forth herein.

46. Defendant made affirmations of fact and promises to consumers, including Plaintiff and the Class, that its products were made without the use of child labor within its supply chain and that Defendant adhered to rigorous ethical standards with respect to its supply chain that are inconsistent with the use of migrant child labor.

47. The natural tendency of these affirmations of fact and promises by the Defendant were to induce consumers, such as Plaintiff and the Class and Sub-Class to purchase Defendant's products at a premium price, and were a basis of the bargain pursuant to which Plaintiff and the Class and Sub-Class purchased Defendant's products to their detriment. Defendant therefore created an express warranty that Defendant's products conformed to these affirmations and promises.

48. Defendant violated this express warranty by using at least one supplier in the manufacture of its products that employs migrant child labor.

49. As a proximate result of the breach of warranties by Defendant, Plaintiff and the Class and Sub-Class did not receive goods as warranted and did not receive the benefit of the bargain. They have been injured and have suffered damages in an amount to be proven at trial.

## COUNT II

## VIOLATIONS OF NEW YORK GEN. BUS. LAW § 349 ("GBL 349")

## DECEPTIVE ACTS AND PRACTICES

50. Plaintiff repeats the allegations in all of the foregoing paragraphs as if fully set forth herein.

51. Section 349 of New York General Business Law ("NYGBL") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service [. . .]"

52. Defendant purposely took actions directed to consumers, including Plaintiff and the Class and Sub-Class, in the form of branding, marketing, advertising, and other messaging, claiming that Defendant's supply chain employed the highest ethical standards and did not rely on migrant child labor.

53. Defendant's acts were and are materially misleading, because Defendant in fact relies upon suppliers that use migrant child labor to manufacture its products.

54. Plaintiff and the Class and Sub-Class have been injured as a result of Defendant's deceptive acts, because they purchased Defendant's product at a premium price on the basis of Defendant's deceptive acts directed at consumers.

## COUNT III

## VIOLATIONS OF NEW YORK GEN. BUS. LAW § 350 ("GBL 350")

## FALSE ADVERTISING

55. Plaintiff repeats the allegations in all of the foregoing paragraphs as if fully set forth herein.

56. Section 350 of the NYGBL prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state [. . .]"

57. Defendant advertised its products to consumers, such as Plaintiff and the Class and Sub-Class, on the basis that Defendant's supply chain employed the highest ethical standards and did not rely on migrant child labor.

58. This advertising was materially false and misleading because, in fact, Defendant relies upon suppliers that use migrant child labor to manufacture its products.

59. Defendant's false advertising has impacted consumers at large, because it has broadly advertised and promoted its products to consumers on the basis of these false and deceptive representations, and has made these false and deceptive representations a key component of the advertised value proposition of its premium products.

60. Plaintiff and the Class and Sub-Class have been injured as a result of Defendant's deceptive acts, because they purchased Defendant's product at a premium price on the basis of Defendant's deceptive acts directed at consumers.

## VII. PRAYER FOR RELIEF

Plaintiff, on his own behalf and on behalf of the Class and the Sub-Class, prays for the following relief:

A. An order certifying the Class and Sub-Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as Class and Sub-Class Representative and his attorneys as Class Counsel;

B. A declaration that Defendant is financially responsible for notifying Class and Sub-Class members of the pendency of this suit;

C. An order declaring that Defendant's conduct violates Defendant's express warranties and violates the consumer protection statutes cited in Counts II and III;

D. An order providing appropriate equitable relief in the form of an injunction against Defendant's unlawful and deceptive acts and practices, and requiring proper, complete, and accurate representation and labeling of Ben & Jerry's products;

E. Actual damages;

F. Restitution for members of the Class and Sub-Class to recover Defendant's ill-gotten benefits and breach of express warranty;

G. Pre- and post- judgment interest on all amounts awarded;

H. Injunctive relief as the Court may deem appropriate; and

I. An order awarding Plaintiff and the Class and Sub-Class their reasonable attorneys' fees and expenses and costs of suit.

## VIII. JURY TRIAL DEMAND

61. Plaintiff hereby demands a trial by jury.

DATED: March 3, 2023

Respectfully submitted,

*/s/ Israel David*

Israel David
*israel.david@davidllc.com*
Blake Hunter Yagman
*blake.yagman@davidllc.com*
Madeline Sheffield
*madeline.sheffield@davidllc.com*
**ISRAEL DAVID LLC**
17 State Street, Suite 4010
New York, New York 10004

Tel.: (212) 739-0622

*Attorneys for Plaintiff*