UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2024 JUL -8  PM 4: 55

CLERK

BY _____
DEPUTY CLERK

DOVID TYRNAUER, AMANDA BERGER, )
DAVID CALLAWAY, CHRIS HALVERSON, )
TIFFANY TAYLOR, and SARAH TICKLE, )
individually and on behalf of all others )
similarly situated, )
 )
    Plaintiffs, )
 )
    v. )
 )
BEN & JERRY'S HOMEMADE, INC., )
 )
    Defendant. )

Case No. 2:23-cv-00299

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND GRANTING PLAINTIFFS LEAVE TO AMEND
(Doc. 40)

Plaintiffs Dovid Tyrnauer, Amanda Berger, David Callaway, Chris Halverson,

Tiffany Taylor, and Sarah Tickle (collectively, "Plaintiffs") bring this class action against

Ben & Jerry's Homemade, Inc., ("Ben & Jerry's") for allegedly misrepresenting the

presence of migrant child labor in its supply chain. Plaintiffs assert seven causes of

action: violation of New York General Business Law § 349 (Count I); violation of New

York General Business Law § 350 (Count II); violation of the California Unfair

Competition Law (Count III); violation of the Illinois Consumer Fraud and Deceptive

Business Practices Act (Count V); breach of express warranty (Count VI); and unjust

enrichment (Count VII).[1]

On August 11, 2023, this action was transferred to the District of Vermont with

both parties' consent. (Docs. 22-23.) Pursuant to Fed. R. Civ. P. 12(b)(6), Ben & Jerry's

filed a motion to dismiss the First Amended Complaint (the "FAC") for failure to state a

---

[1] In their Response, Plaintiffs withdrew their California Consumer Legal Remedies Act claim
(Count IV).

claim on October 30, 2023, (Doc. 40), and on November 30, 2023, Plaintiffs opposed the motion. (Doc. 41.) Ben & Jerry's filed a reply on December 21, 2023, at which time the court took the pending motion under advisement. (Doc. 42.)

Plaintiffs are represented by Russell D. Barr, Esq., Blake H. Yagman, Esq., and Israel David, Esq. Ben & Jerry's is represented by Dale J. Giali, Esq., Keri E. Borders, Esq., Shaila Rahman Sayma Diwan, Esq., and Walter E. Judge, Jr., Esq.

## I.     Allegations in the First Amended Complaint.

### A.     Ben & Jerry's.

Founded in Vermont, Ben & Jerry's is a corporate subsidiary of Unilever. Its alleged signature product and principal source of revenue is ice cream, which it sells in grocery stores nationwide. Plaintiffs allege that Ben & Jerry's has "historically leaned into social justice issues as a core component of its branding and marketing" to attract "like-minded consumers" who buy products to "promote a common ethos." (Doc. 16 at 7, ¶ 26.) It promotes a self-image that is "driven by ethics and values, not just profits" in order to distinguish its brand, *id.* at 9, ¶ 32, and "purports to use ethical supply chains and professes concern about farmworker welfare[.]" *Id.* at 3, ¶ 3. Consumers "pay a premium" for Ben & Jerry's ice cream allegedly not because of its "premium quality" but because of the company's "ethical sourcing[]" and "ethical standards[.]" *Id.* at 3, 7, ¶¶ 4, 27.

### B.     The February 25, 2023 *New York Times* Article.

On February 25, 2023, *The New York Times* published an article entitled "Alone and Exploited, Migrant Children Work Brutal Jobs Across the U.S." (the "February 25 Article"). Based on interviews with more than 100 child workers who "described jobs that were grinding them into exhaustion[] and fears that they had become trapped in circumstances they never could have imagined[,]" *id.* at 20-21, ¶¶ 47-48 (internal quotation marks omitted), the February 25 Article stated that "[migrant children] bake dinner rolls sold at Walmart and Target, process milk used in Ben & Jerry's ice cream and help debone chicken sold at Whole Foods." (Doc. 40-2 at 5.) Migrant child workers, according to the article, "run milking machines in Vermont[,]" *id.*, and "[i]n dairy

2

production, the injury rate is twice the national average across all industries." *Id.* at 15. The February 25 Article describes an individual who "arrived in Middlebury, Vt., when he was 14 and has been working 12-hour days on dairy farms in the four years since. He said he crushed his hand in an industrial milking machine in the first months of doing this work." *Id.* The February 25 Article does not state that this individual worked on a farm that supplied milk to Ben & Jerry's.

The February 25 Article explained that Ben & Jerry's "said it worked with labor groups to ensure a minimum set of working conditions at its dairy suppliers[,]" and its "head of values-led sourcing, [Cheryl Pinto,] said that if migrant children needed to work full time, it was preferable for them to have jobs at a well-monitored workplace." *Id.* at 16. When contacted by media outlets such as Fox News, Ben & Jerry's allegedly stated: "Ben & Jerry's is opposed to child labor of any kind whatsoever. The company . . . ensures that farmworkers are fairly compensated for their labor, work in healthy conditions, and builds in additional safeguards for those who are 16 and 17." (Doc. 16 at 24, ¶ 58) (internal quotation marks omitted) (alteration in original).

### C.     Packaging, Labels, and Website.

Plaintiffs claim that Ben & Jerry's publicized its values on its ice cream cartons, which state: "We strive to make the best possible ice cream in the best possible way. We source **Non-GMO** ingredients, **Fairtrade** cocoa, sugar & vanilla, & eggs from **cage-free hens**." *Id.* at 8-9, ¶ 31 (emphasis in original). The Ben & Jerry's "ethos" is allegedly "ingrained in every aspect of Ben & Jerry's image." *Id.* at 10, ¶ 33.

Plaintiffs cite Ben & Jerry's website, allegedly "portraying [it] as a company that truly cares about ethical sourcing[.]" *Id.* at 10, 13, ¶¶ 33, 39. They cite the following examples from the "Our Progressive Values" Ben & Jerry's webpage:

- We love making ice cream – but using our business to make the world a better place gives our work its meaning. Guided by our Core Values, we seek in all we do, at every level of our business, to advance human rights and dignity, support social and economic justice for historically marginalized communities, and protect and restore the Earth's natural systems. In other words: we use ice cream to change the world.

3

- Human Rights & Dignity. We are committed to honoring the rights of all people to live with liberty, security, self-esteem, and freedom of expression and protest, and to have the opportunity to provide for their own needs and contribute to society.

- Capitalism and the wealth it produces do not create opportunity for everyone equally. We recognize that the gap between the rich and the poor is wider than at any time since the 1920s. We strive to create economic opportunities for those who have been denied them and to advance new models of economic justice that are sustainable and replicable.

*Id.* at 10-11, ¶ 34(a-c) (internal quotation marks omitted).

The "How We Do Business" webpage states:

- Thriving farmers and farmworkers. The ice cream euphoria we conjure up couldn't exist without our farmers. Guided by our core values and our work with respected partner organizations, we help ensure that all farmers and farmworkers in our supply chain – from Vermont dairy farms to smallholder cocoa farms in the Ivory Coast – can thrive. We believe those impacted should be part of the conversation about working conditions and business practices.

    . . .

- Shared Success. We aim to create prosperity for everyone that's connected to our business.

*Id.* at 14, ¶ 40(a) (citations and internal quotation marks omitted).

The "Issues We Care About – Fairtrade" webpage explains:

- The hard-working farmers we partner with always get a fair price for their products and harvest. In return, they agree to run their farms with care for the environment, an[] eye for employees' wellbeing, and a heart to give something back to their communities[.]

(Doc. 16 at 14, ¶ 40(b)) (internal quotation marks omitted).

Under the heading "Our Values[,]" a webpage includes images such as hearts, a globe, and clasped hands of various skin tones. *Id.* at 16, ¶ 41.

### D.    Membership in Caring Dairy and Milk with Dignity Programs.

Ben & Jerry's promotes its membership in "Caring Dairy" and "Milk with Dignity," two ethics-based programs "that emphasize purported ethical labor practices[,]" are "human rights-centric[,]" and are "designed to attract consumers wishing to buy

4

products that are ethically sourced." *Id.* at 2, 16, ¶¶ 2, 42.

Caring Dairy, an internal Ben & Jerry's program, allegedly "helps farmers move toward more sustainable practices" based on the three pillars of "happy cows, happy farmers, and happy planet." *Id.* at 7-8, ¶ 28 (internal quotation marks omitted). The Ben & Jerry's website states that it is "our . . . program to support farmers in producing the best dairy in the best way possible[,]" *id.* at 17, ¶ 42 (alteration in original) (internal quotation marks omitted), and further explains that "we partner with farmers . . . to support them in improving their farming practices. Our goal? Thriving farmers and farmworkers, healthy cows, and doing right by the environment." Caring Dairy, https://www.benjerry.com/values/how-we-do-business/caring-dairy (last visited July 3, 2024); *see* Doc. 40 at 18.

The FAC includes an image allegedly depicting a table of "Caring Dairy Program Standards":

> Quantitative Metric Questions, Milk With Dignity (MD), Global Animal Partnership (GAP), Vermont Required Ag Practices (RAPs), Complete Nutrient Mass Balance (NMB), Third Party Audited, Cover Crop Corn Acres, No-Till or Minimum Till (no more than 3"), Corn Crop Rotation Commitment, Biodiversity Action Plan, Develop & Implement NMB Plan, Cornell Soil Testing (CASH), 50% or More of Ration from Forage, Plan & Implement Two "Prove It" Projects[.]

(Doc. 16 at 19, ¶ 43) (internal citations omitted).

Plaintiffs cite a Ben & Jerry's website statement: "[F]arms have to meet a specific set of criteria in order to maintain their place in the Caring Dairy program. In exchange for meeting these requirements, [farms] make additional money (mooo-lah, if you will)." *Id.* at 19-20, ¶ 44 (second alteration in original) (citation and internal quotation marks omitted).

The Milk with Dignity program supports similar values to the Caring Dairy program and is allegedly "a standards council that works to monitor the development of a sustainable dairy industry that advances the human rights of farmworkers, the long-term interests of farmers, and the ethical supply chain concerns of consumers and retail food companies through the implementation of the Milk with Dignity program." *Id.* at 16-17,

5

¶ 42 (citation and internal quotation marks omitted). It is "composed of and subscribed to by various participants in the dairy industry who have each agreed to subscribe to enumerated standards and ethical guidelines." *Id.* at 8, ¶ 29. Ben & Jerry's website states that "participating buyers provide a premium to participating farms *that agree to work towards compliance* with the labor standards in the Milk with Dignity (MD) Code of Conduct." About, https://www.milkwithdignity.org/about (last visited July 3, 2024); *see* Doc. 40 at 18 (emphasis supplied).

> On a webpage entitled "What Is Milk with Dignity?[,]" Ben & Jerry's explains:
>
> [It] is an independent, farmworker-led labor standard which works with farmers and farmworkers to ensure dignified working conditions on Caring Dairy farms. Caring Dairy farmers are required to commit to and actively implement the Milk With Dignity Program, which ensures that farmworkers have[] [the following benefits]: "[a]dequate breaks, time off, and paid sick time[,]" "[s]afe working conditions[,]" "[f]air housing[,]" "[a] wage increase supported by premiums paid to participating farms[,]" "[a]ccess to a farmworker support hotline to bring questions and concerns to the Milk with Dignity Standards Council, with strict protections against retaliation[,]" and "[w]orker-to-worker education to ensure farmworkers know their rights and responsibilities under the program[.]"

(Doc. 16 at 18, ¶ 43(a).)

Although they point to no packaging, labeling, or website statement promising there is no child labor in Ben & Jerry's supply chain, Plaintiffs claim consumers "are deliberately lulled by Ben & Jerry's into believing" that its supply chain excludes child labor. *Id.* at 20, ¶ 45. They allege that "no reasonable consumer confronted with this tsunami of messaging regarding Ben & Jerry's supposed ethical sourcing would ever imagine (much less suspect)" that the company's supply chain utilizes child labor. *Id.*

### E. Certified B Corporation Status.

Since 2012, Ben & Jerry's has been a certified B Corporation ("B Corp") and, as a result, must satisfy "a rigorous set of standards consisting of verified social and environmental performance, public transparency, and legal accountability[]" and publish annual compliance disclosures. *Id.* at 11, ¶ 37. Plaintiffs claim that consumer-facing corporations have a financial incentive to become B Corps, quoting a U.S. Chamber of

6

Commerce statement that a "B Corp's most notable advantage is that it may attract customers looking to patronize businesses perceived to share their convictions and values." *Id.* at 13, ¶ 39 (alteration, citation, and internal quotation marks omitted).

Ben & Jerry's packaging on the "Half Baked" flavor carton contains the following statement:

> Ben & Jerry's is proud to partner with fellow B Corps Greyston & Rhino Bakeries to bring you *half baked*. The incredible stories behind both the fudge brownies & cookie dough make this a flavor that not only tastes good, but does good.

*Id.* at 9, ¶ 31 (emphasis in original). Plaintiffs claim this carton is "one of numerous" examples of Ben & Jerry's publicizing its B Corp status on ice cream packaging. (Doc. 16 at 12, ¶ 38.) The "We're B Corp Certified" Ben & Jerry's webpage explains:

> In 2012, with the full support of our parent company, Unilever, Ben & Jerry's became the first wholly owned subsidiary in the world to gain B Corp certification.
>
> Certified B Corporations, or B Corps, must meet social, economic, and environmental standards that make them not only the best companies in the world, but the best companies for the world.

*Id.* at 13, ¶ 38. Ben & Jerry's 2017 B Corp Public Assessment includes the following questions and answers:

- "Does your company have a written employee handbook that workers have access to and includes any of the following information?[,]" with a checked checkbox next to "Prohibition of child labor and forced/compulsory labor[.]"

- "What is the social and environmental screen that is used for a majority of your company's Significant Suppliers[?,]" with a checked checkbox next to "Screened for negative practices or regulatory non-compliance (e.g. no child labor)[.]"

- "Does the company's Supplier Code of Conduct policy specifically hold the company's suppliers accountable to the following areas of social and environmental performance?[,]" with a checked checkbox next to "Child labor[.]"

(Doc. 41-1 at 15, 25-26.)

Ben & Jerry's 2022 B Corp Transparency Assessment includes the following

questions and answers:

- "What is included in your company's written and accessible employee handbook?[,]" with <u>no</u> check for "Prohibition of child labor and forced or compulsory labor[.]"

- "What areas of social and environmental performance are specifically included in your company's Supplier Code of Conduct policy?[,]" with a checked checkbox next to "Child labor[.]"

- After the statement, "Employment of workers under the age of 15, use of workers who are currently prisoners, or other practices that are relevant to risk of forced labor[,]" there is a filled-in circle next to "No[.]"

Ben & Jerry's B Corp 2022 Impact Assessment, at 28, 48, 101,

https://s3.amazonaws.com/blab-impact-published-

production/80bzHVQLBN57EWNennPZZjtXYTsItyVv (last visited July 3, 2024); *see*

Doc. 42 at 7 n.2.

Plaintiffs claim Ben & Jerry's "made affirmations of fact and promises to consumers . . . that its products were made without the use of child labor within its supply chain and that [it] adhered to rigorous ethical sourcing standards with respect to its supply chain that are wholly inconsistent with the use of migrant child labor[,]" thereby inducing consumers to purchase its products at a premium price. (Doc. 16 at 37, ¶ 116.)

   **F.     The Proposed Class Action.**

Plaintiffs Tyrnauer and Taylor are residents of New York, Plaintiff Berger is a resident of Illinois, Plaintiffs Callaway and Halverson are California residents, and Plaintiff Tickle is a Massachusetts resident. Plaintiffs are and have been "at all relevant times" residents of their named states. *Id.* at 4-6, ¶¶ 11, 13, 15, 17, 19, 21.

Ben & Jerry's is a Vermont corporation. Plaintiffs allege that the court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332, because the proposed class involves more than 100 putative members, there is minimal diversity of citizenship, and damages exceed $5,000,000 exclusive of costs and interests.

Plaintiffs bring claims on behalf of five distinct classes, each consisting of "[a]ll consumers [in each geography] who bought Ben & Jerry's products during the applicable

8

statutory period." *Id.* at 28, ¶ 63. Plaintiffs collectively seek to represent United States consumers (the "Nationwide Class"), California consumers (the "California Class"), Illinois consumers (the "Illinois Class"), Massachusetts consumers (the "Massachusetts Class"), and New York consumers (the "New York Class"), excluding Ben & Jerry's and its legal representatives, officers, directors, assigns, and successors, as well as the assigned judge and the judge's staff.

Each named Plaintiff allegedly bought Ben & Jerry's "on multiple occasions during the applicable statutory period[,]" *id.* at 4-6, ¶¶ 11, 13, 15, 17, 19, 21, "at various retail locations[,]" and "paid a premium" for the products, "which should have sold for a price less than the price paid . . . due to Ben & Jerry's misrepresentations and omissions regarding the use of . . . migrant child labor in its supply chain and the company's purported ethical sourcing." *Id.* at 25-27, ¶ 61(a-f). Without Ben & Jerry's alleged "misrepresentations and omissions" regarding its supply chain's inclusion of migrant child labor, Plaintiffs allege they "would not have bought [Ben & Jerry's] products at all or would have paid less than the amount that they actually paid." *Id.* at 24, ¶ 59. They claim that they "did not receive goods as warranted and did not receive the benefit of the bargain," as a result of an alleged express warranty breach. (Doc. 16 at 38, ¶ 119.)

Plaintiff Tyrnauer was allegedly aware of Ben & Jerry's "trade dress, advertisements, and representations regarding ethics" at the time of purchase, *id.* at 25, ¶ 61(a), and Plaintiff Berger "reviewed, relied on and was aware of Ben & Jerry's representations online in connection with the 'Caring Dairy' program regarding ethical sourcing." *Id.* at 25-26, ¶ 61(b). Plaintiff Halverson "reviewed and relied on Ben & Jerry's online [B Corp] certification's representations regarding ethical sourcing and child labor when he purchased Ben & Jerry's products." *Id.* at 26, ¶ 61(d). Plaintiffs Callaway, Tickle, and Taylor "relied on and w[ere] aware of Ben & Jerry's trade dress, advertisements, and representations regarding ethics and human rights" at the time of purchase, and Plaintiff Callaway "specifically rel[ied] on representations he heard on the radio and saw online regarding Ben & Jerry's ethical sourcing[.]" *Id.* at 26-27, ¶ 61(c), (e), and (f).

9

Plaintiffs' prayer for relief seeks class certification, a declaratory judgment, actual and statutory damages, an injunction, restitution, disgorgement of profits, pre- and post-judgment interest, as well as other relief deemed appropriate and reasonable attorney's fees and costs.

## II.   Conclusions of Law and Analysis.

### A.   Standard of Review.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (internal quotation marks omitted), *aff'd*, 568 U.S. 85 (2013). "'The party invoking federal jurisdiction bears the burden of establishing' that jurisdiction exists." *Sharkey v. Quarantillo*, 541 F.3d 75, 82-83 (2d Cir. 2008) (quoting *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561 (1992)). In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), "the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (citation and internal quotation marks omitted).

### B.   Whether Plaintiffs Have Article III Standing to Sue Ben & Jerry's.

"Standing is a federal jurisdictional question 'determining the power of the court to entertain the suit.'" *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "[T]he irreducible constitutional minimum of standing contains three elements." *Lujan*, 504 U.S. at 560.

> First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical[.] Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 560-61 (alterations adopted) (citations, footnote, and internal quotation marks omitted).

To invoke the jurisdiction of the federal courts, Plaintiffs "must clearly allege facts demonstrating each element[]" of Article III standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (alteration adopted) (citation, footnote, and internal quotation marks omitted). "For each form of relief sought, a plaintiff must demonstrate standing separately[,]" and "[a] plaintiff seeking to represent a class must personally have standing." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (citations and internal quotation marks omitted). At the pleading stage, standing is not "an onerous standard[,]" *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016), but rather a "relatively modest" burden. *Bennett v. Spear*, 520 U.S. 154, 171 (1997).

Nonetheless, a "'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo*, 578 U.S. at 340; *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (stating that an Article III injury must be "'concrete'—that is, 'real, and not abstract'") (citation omitted). "To ensure that this bedrock case-or-controversy requirement is met, courts require that plaintiffs establish their standing as the proper parties to bring suit." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (alterations adopted) (citation and internal quotation marks omitted). This "helps to ensure that the plaintiff has a personal stake in the outcome of the controversy." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citation and internal quotation marks omitted).

In seeking dismissal of the FAC, Ben & Jerry's argues that Plaintiffs' standing is based on allegations that they experienced "subjective disappointment upon reading the New York Times article[.]" (Doc. 40 at 22.) It contends that Plaintiffs "received exactly what they paid for," premium ice cream, and they do not allege that they "did not receive an 'ethically[]produced product.'" (Doc. 42 at 13) (emphasis omitted). Ben & Jerry's further asserts that Plaintiffs lack standing to challenge the B Corp label statement because no named Plaintiff claims to have purchased the flavor that bears that reference. Ben & Jerry's further points out that Plaintiffs identify no B Corp certification representation by Ben & Jerry's that its supply chain contains no child labor, only that it does not do so itself and encourages its suppliers not to do so and strives to hold them accountable through a Supplier Code of Conduct.

11

Plaintiffs respond that they have adequately alleged an injury in fact based on an overpayment theory of economic harm regarding "the premium that Ben & Jerry's charges due to its misrepresentations on ethical sourcing[,]" which rendered the ice cream products they purchased "worth less than they paid." (Doc. 41 at 16-17.) They also argue that there is no "numerical threshold of verified instances of child labor" necessary to create an actionable injury for Article III standing, *id.* at 18, and that there is "nothing ethical" about using child labor in ice cream manufacturing. (Doc. 16 at 23, ¶¶ 53-54.)[2]

Courts have ruled that either asserting a "benefit of the bargain" or "overpayment" theory of economic harm based on a mere subjective belief in a product's quality will not suffice for standing. Instead, "a plaintiff might successfully plead an economic injury by alleging that [he or] she bargained for a product worth a given value but received a product worth less than that value[,] . . . calculated as the difference in value between what was bargained for and what was received." *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 283 (3d Cir. 2018). In doing so, however, a plaintiff "must do more than allege that [he or] she did not receive the benefit [he or] she *thought* she was obtaining[] [and instead] . . . show that [he or] she did not receive a benefit for which [he or] she actually *bargained*." *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020) (emphasis in original) (internal quotation marks omitted).

For overpayment injuries, "a plaintiff can satisfy the injury in fact requirement by showing that she paid more for a product than she otherwise would have due to a defendant's false representations *about the product*." *Id.* (emphasis supplied). "[N]o one disputes that overpaying for a product results in a financial loss constituting a particularized and concrete injury in fact." *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017). Moreover, a plaintiff's "failure to identify the prices of

---

[2] As Ben & Jerry's points out, labor by a person under the age of eighteen is not illegal. Under federal law, "oppressive child labor within the meaning of the Fair Labor Standards Act when performed by minors who are 14 and 15 years of age[]" does not include farming as a specified activity. 29 C.F.R. § 570.33. In Vermont, children "under 14 years of age" may be employed at a family farm. 21 V.S.A. § 436.

competing products to establish the premium that [he or] she paid 'is not fatal to [the] claim'" at the motion to dismiss stage. *Axon v. Fla.'s Nat. Growers, Inc.*, 813 F. App'x 701, 704 (2d Cir. 2020) (citation omitted). However, a plaintiff may not allege standing based upon false advertising without identifying the false representation upon which he or she relied in making a product purchase. An abstract, subjective belief that a particular product is not sufficiently "ethical" or "ethically sourced" falls far short of the requisite showing. *See Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231, 243-44 (S.D.N.Y. 2022) ("A plaintiff does not have a claim . . . just because [he or] she comes away from an advertisement with an incorrect impression. That impression must be reasonably traceable to a misleading statement from the defendant.").[3]

Plaintiffs do not identify a representation by Ben & Jerry's to consumers that its ice cream was produced and manufactured without the participation of any person under the age of eighteen in its supply chain. *Cf. Walker v. Nestle USA, Inc.*, 2022 WL 901553, at *3 (S.D. Cal. Mar. 28, 2022) (finding standing for a putative class representative who "alleges she purchased Defendant's hot cocoa mix and morsels products, in reliance on the statements *on product packaging*, and wou[l]d not have purchased the products ha[d] she known that the statements were false") (emphasis supplied). The closest representation is Ben & Jerry's 2017 response to a B Corp certification questionnaire in which it stated its employee handbook prohibits "child labor[,]" it uses a social and environmental screening for "a majority of [its] Significant Suppliers[]" for "negative practices" such as "no child labor[,]" and its Supplier Code of Conduct policy "hold[s] the company's suppliers accountable to the [certain] areas of social . . . performance [including no] [c]hild labor[.]" (Doc. 41-1 at 15, 25-26.) None of these statements are

---

[3] *See also Ehlers v. Ben & Jerry's Homemade Inc.*, 2020 WL 2218858, at *6 (D. Vt. May 7, 2020) ("Plaintiff cannot point to an actual misrepresentation, but instead relies exclusively on his interpretation of a phrase he characterizes as conveying the *impression* that all of Ben & Jerry's products are 'sourced exclusively' from 'Caring Dairies.'") (footnote omitted) (emphasis in original); *Earth Island Inst. v. The Coca-Cola Co.*, 2022 WL 18492133, at *5 (D.C. Super. Nov. 10, 2022) (finding cited statements non-actionable under state law because "corporate ethos, hopes, and philosophies, represented by statements on various corporate communications, but not on the product label, cannot be considered as part of the product itself").

alleged to be directed to consumers and none of these statements constitute an affirmation that no child labor was used in the production of Ben & Jerry's products.

Although Plaintiff Halverson allegedly "reviewed and relied on Ben & Jerry's online [B Corp] certification's representations regarding ethical sourcing and child labor when he purchased Ben & Jerry's products[,]" no other Plaintiff asserts a similar allegation. No Plaintiff, including Plaintiff Halverson, alleges he or she purchased ice cream with Ben & Jerry's B Corp status on its packaging.[4]

Plaintiffs allege they first discovered the presence of alleged child labor in Ben & Jerry's supply chain in response to the February 25 Article. *See* Doc. 16 at 20, ¶ 46 ("The Sad Truth is Revealed . . . In stark contrast to [Ben & Jerry's] incessant representations to consumers, Ben & Jerry's was recently exposed for using at least one supplier that employs migrant child labor."). The February 25 Article, however, does not identify a farm that both used child labor and supplied milk products to Ben & Jerry's.

In the FAC, Plaintiffs allege that they "would not have bought [Ben & Jerry's] products at all or would have paid less than the amount that they actually paid[]" had they known about the alleged migrant child labor in the Ben & Jerry's supply chain. *Id.* at 24, ¶ 59. They also claim that because of an alleged breach of an express warranty, they "did not receive goods as warranted and did not receive the benefit of the bargain." *Id.* at 38, ¶ 119.

"[T]he threshold question of whether plaintiff has standing (and the court has jurisdiction) is distinct from the merits of [a] claim. Rather, the jurisdictional question of standing precedes, and does not require, analysis of the merits." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (alteration adopted) (citation and internal quotation marks omitted). Although Plaintiffs need not prove the merits of their claims to establish

---

[4] *See DiMuro v. Clinique Lab'ys, LLC*, 572 F. App'x 27, 29 (2d Cir. 2014) ("Plaintiffs lack class standing to bring claims for the four products that they did not purchase, and these claims were properly dismissed."); *McVetty v. TomTom N. Am., Inc.*, 2021 WL 965239, at *4 (S.D.N.Y. Mar. 13, 2021) ("Plaintiff has failed to allege which Product he or any other class member purchased, how much was paid, or what a comparable alternative would have cost, and accordingly has not adequately alleged that he or any class member paid a premium.").

Article III standing, standing on either a "benefit of the bargain" or "overpayment" theory of injury is not sufficiently "concrete and particularized" if it is based on a subjective opinion of whether a product is "ethical" or "ethically sourced." The meaning of that term varies depending upon a consumer's own value system, and any resulting injury when that value system is violated is neither "particularized" nor "concrete." Binding precedent makes this point clear.

The Second Circuit recently found standing for an alleged overpayment injury because of a concrete misrepresentation in *John v. Whole Foods Market Group, Inc.*, 858 F.3d 732 (2d Cir. 2017), as to pre-packaged cheese and cupcakes whose weights were overstated on their labels. There, the plaintiff pointed to an affirmative misrepresentation on the product packaging based upon a quantifiable fact. *See Caudel v. Amazon.com, Inc.*, 2021 WL 4819602, at *3 (E.D. Cal. Oct. 15, 2021) ("[I]n overpayment theory cases, the majority of courts have consistently found economic injury when the products contain *an actual defect* and are allegedly worth less than what the consumer paid.") (emphasis supplied).

In *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88 (2d Cir. 2018), the Second Circuit found the plaintiff's "individual standing to sue [was] not in doubt[,]" explaining: "[plaintiff] has standing to sue [defendant] under [the Connecticut Unfair Trade Practices Act] because she alleged that she paid a premium in Connecticut for the products, based on [defendant's] representations that they were natural, and that those injuries can be redressed by an order compelling [defendant] to pay [plaintiff] money damages." *Id.* at 92, 96. Whether the products were "natural" was a provable fact directly tied to the quality of the product purchased.

Similarly, in *Axon v. Florida's Natural Growers, Inc.*, 813 F. App'x 701 (2d Cir. 2020), the Second Circuit found a product's "natural" label was misleading because it included a non-natural ingredient, and thus "[plaintiff] has suffered an injury-in-fact because she purchased products bearing allegedly misleading labels and sustained

financial injury – paying a premium – as a result."[5] *Id.* at 703-04.

*Falcone v. Nestle, USA, Inc.*, 2023 WL 4551083 (S.D. Cal. July 13, 2023), on which Plaintiffs heavily rely, is inapposite because numerous statements on the *products' labels* indicated that the products supported and improved the lives of cocoa farmers, and the plaintiffs in that case were able to cite evidence *from the defendant* that the use of child labor increased during the *defendant's program* for improving farmers' lives.

Here, Plaintiffs' alleged economic injury is based solely on generalized or unrelated ethical pronouncements made by Ben & Jerry's on its packaging, websites, and B Corp certification questionnaires, none of which contain an affirmative representation from Ben & Jerry's that no child labor was used in the production of its ice cream. *See Myers v. Starbucks Corp.*, 2024 WL 3102800, at *1 (9th Cir. June 24, 2024) (unpublished) (rejecting claim because "Mars's Dove Dark Chocolate label does not represent that Rainforest Alliance Certified farms avoid deforestation and the use of child labor").

In tacit recognition of the absence of an affirmative misrepresentation, Plaintiffs have characterized their harm as emanating from alleged misrepresentations that Ben & Jerry's ice cream is "ethical" and "ethically sourced." In this respect, Plaintiffs' "harm" is not traceable to Ben & Jerry's representations but, rather, is traceable to their individualized, subjective reactions to the February 25 Article and a third-party farm's alleged use of migrant child labor. *See Murthy v. Missouri*, 2024 WL 3165801, at *8 (U.S. June 26, 2024) (declining to find standing for plaintiffs' claims against governmental actors for influencing social media companies when it is social media companies as independent third parties that have caused plaintiffs' harm and observing "[i]f the plaintiffs [are] seeking compensatory relief, the traceability of their past injuries [is] the whole ball game").

---

[5] In doing so, the court nonetheless ruled that the district court properly dismissed the claim, noting that "the term 'natural' occurred only within the brand name 'Florida's Natural' and nowhere else on the packaging." *Axon v. Fla.'s Nat. Growers, Inc.*, 813 F. App'x 701, 705 (2d Cir. 2020).

Standing requires a plaintiff to have suffered the "invasion of a legally protected interest" that is "concrete and particularized[]" and that is not an "abstract[]" interest shared by everyone. *Lujan*, 504 U.S. at 560, 573 (ruling that a desire to view endangered species was not sufficiently particularized and concrete to establish standing); *see also In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d at 287 ("[E]ven at the pleading stage, a plaintiff must set forth sufficient factual allegations that, if proven true, would permit a factfinder to determine that she suffered at least *some* economic injury.") (emphasis in original).

Although "[a]ny monetary loss suffered by [a] plaintiff satisfies" the Article III injury in fact requirement, *Sonterra Cap. Master Fund Ltd. v. UBS AG*, 954 F.3d 529, 534 (2d Cir. 2020) (citation and internal quotation marks omitted), the monetary loss in this case depends not on the product's advertising, labeling, packaging, quality, quantity, or ingredients, but on Plaintiffs' subjective, abstract, and intangible belief that Ben & Jerry's ice cream is not sufficiently "ethically sourced." Plaintiffs fail to establish standing on this basis. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 368 (2024) ("By requiring the plaintiff to show an injury in fact, Article III standing screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action.").[6]

For the reasons stated above, the court GRANTS Ben & Jerry's motion to dismiss.

**III.     Whether the Court Grants Plaintiffs Leave to Amend.**

Pursuant to Fed. R. Civ. P. 15(a)(2), courts "should freely give leave" to amend a complaint "when justice so requires." However, "[l]eave may be denied 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'"

---

[6] *See also Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 80 (2019) (explaining that, in the Establishment Clause context, the "'offended observer' theory of standing has no basis in law") (Gorsuch, J., concurring); *Burlington v. Cathedral of the Immaculate Conception Par. Charitable Tr.*, 2023 WL 5387506, at *8 (D. Vt. Aug. 22, 2023) ("Plaintiffs' alleged harm, deprivation of their aesthetic interest in the Cathedral, is . . . an indirect effect that is 'too far removed, too attenuated' from the allegedly unconstitutional restriction on municipal zoning review to confer standing.") (citation omitted).

*TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). Plaintiffs are hereby GRANTED leave to amend and may submit a proposed Second Amended Complaint within twenty (20) days of the date of this Opinion and Order consistent with the Federal Rules of Civil Procedure and this court's Local Rules.

## CONCLUSION

For the foregoing reasons, the court GRANTS Ben & Jerry's motion to dismiss Plaintiffs' claims, (Doc. 40), and GRANTS Plaintiffs leave to amend.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this __8th__ day of July, 2024.

Christina Reiss, District Judge
United States District Court

18